# Exhibit 1

**BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION**

| | |
|---|---|
| In re: Rare Breed Triggers Patent Litigation | MDL No. 3176 |

**DISRUPTOR DEFENDANTS' BRIEF IN SUPPORT OF
MOTION TO VACATE CONDITIONAL TRANSFER ORDER (CTO-1)**

Under J.P.M.L. Rule 7.1(g), and for the reasons set forth in the transfer motion in the proceeding *In re: Disruptor Trigger Mechanism Patent Litigation*, MDL No. 3186, Defendants Peak Tactical, LLC ("Peak Tactical") and Nick Norton[1]; SGC, LLC, Terence Schmidt, and Ronald Kennedy[2]; WebCorp, Inc. and TJ Kirgin[3]; Hawkphin Sales, LLC and Adam Gerleman[4]; Cloak Industries, Inc. and William King, Jr.[5]; Firearm Systems, LLC, Brandon Donatto, and Michael Stakes[6]; AR-TT LLC, Clausen Inc., Jonathan Clausen, and Jodi Clausen[7]; and Canuck Tactical LLC[8] (altogether, the "Disruptor Defendants") respectfully move to vacate the Conditional Transfer Order (CTO-1) (the "CTO," Dkt. 45) as it pertains to the eight pending actions filed against them by Rare Breed Triggers, Inc. and ABC IP, LLC (the "Disruptor Actions").

## **INTRODUCTION**

By order dated April 2, 2026 (the "Transfer Order," Dkt. 44), the Panel centralized six patent infringement cases before the Honorable Amos L. Mazzant, III, in the Eastern District of Texas (the "Centralized Actions"). In each, Plaintiffs Rare Breed Triggers, Inc. and ABC IP, LLC ("Rare Breed") accuse those defendants of selling a set of trigger parts known as a "Super Safety." Rare Breed alleges the Super Safety parts infringe in similar ways four Rare Breed patents—U.S. Patent Nos. 12,038,247; 12,031,784; 12,529,538; and 12,578,159 (the "Centralized Patents").

On April 3, 2026, the Panel's Clerk issued the CTO, which conditionally transferred 16 more cases to Judge Mazzant. Among these are the Disruptor Actions. In all eight Disruptor

---

[1] Defendants in No. 26cv00018 (D. Wyo.) (Rankin, C.J.).
[2] Defendants in No. 26cv00085 (D. Ariz.) (Lanham, J.).
[3] Defendants in No. 26cv00018 (E.D. Mo.) (Clark, C.J.).
[4] Defendants in No. 26cv00015 (S.D. Iowa) (Jackson, J.).
[5] Defendants in No. 26cv00001 (D. Idaho) (Brailsford, C.J.).
[6] Defendants in No. 25cv04938 (D. Ariz.) (Brnovich, J.).
[7] Defendants in No. 26cv00014 (E.D. Wash.) (Rice, J.).
[8] Defendants in No. 26cv00576 (E.D. La.) (Papillion, J.).

Actions, Rare Breed accuses the Disruptor Defendants of selling a modular, drop-in trigger mechanism called the Disruptor. Among the Disruptor Actions, one case involves the entity (Peak Tactical) that designed, makes and sells the Disruptor triggers. The other seven cases were filed against entities who merely sell the trigger at retail (dealers). All eight Disruptor Actions allege that the Disruptor infringes four *other* Rare Breed patents—U.S. Patent Nos. 10,514,223; 11,724,003; 12,036,336; and 12,274,807 (the "Disruptor Patents"). And in all eight cases, the Disruptor Defendants have alleged or will allege that a fifth patent, No. 9,146,067 ("'067 Patent"), along with other prior art, renders the Disruptor Patents obvious and invalid.

Under consistent Panel authority, the mere fact that all the Centralized and Disruptor Actions *generally* concern firearm triggers does not justify centralization, given the actions' disparate patent claims and products. The Centralized Patents are not a common thread in the Disruptor Actions, nor are the Disruptor Patents (or the '067 Patent) present across the Centralized Actions. Indeed, across the two groups, only three out of fourteen cases include any overlap of Centralized Patents and Disruptor Patents, and only one of the fourteen cases includes a product that is common between them. *See* Dkt. 35-1.

| Case Group | Defendant | Product | Central'd Patents | Disruptor Patents |
|---|---|---|---|---|
| Central'd | 80Mills, et al | SS | X | |
| Central'd | DNT, et al | SS | X | |
| Central'd | Hanes, et al | SS | X | |
| Central'd | Z3 Prods | SS | X | |
| Central'd | Nguyen, et al | SS | X | |
| Central'd | Harrison, et al | SS, Defender FRT | **X** | **X** |
| Disruptor | Hawkphin, et al | Disruptor, **SS**, Selektor | **X** | **X** |
| Disruptor | WebCorp, et al | Disruptor, Selektor | **X** | **X** |
| Disruptor | RangeSport | Disruptor | | X |
| Disruptor | AR-TT, et al | Disruptor | | X |
| Disruptor | Cloak Indus, et al | Disruptor | | X |
| Disruptor | Firearm Sys, et al | Disruptor | | X |
| Disruptor | Peak Tactical, et al | Disruptor | | X |
| Disruptor | SGC Grp, et al | Disruptor | | X |

Because the products at issue in the Centralized Actions differ from those in the Disruptor Actions, and because there is not a single patent that is present across both groups, the two groups of cases lack a common factual core. Moreover, since none of the Disruptor Actions is pending in Texas, and all share a strong evidentiary nexus with Wyoming—where the Disruptor was designed and made—centralization in the Eastern District of Texas will not serve convenience of the parties or witnesses. Accordingly, the Disruptor Defendants move to vacate the CTO and respectfully urge the Panel to order the transfer sought by the Disruptor Defendants in MDL No. 3186.

## **BACKGROUND**

### *The Accused Products*

Peak Tactical is a Wyoming company that makes, markets, and sells the Disruptor through a network of dealers. The Disruptor is a forced- or assisted-reset trigger mechanism that, through a precise mechanical process, pushes the trigger forward after each shot so the user can rapidly fire follow-up rounds once the trigger is reset without removing pressure by the trigger-finger. As seen in this image taken from a Rare Breed complaint, Dkt. 19-8 ¶ 26, the Disruptor is a modular, drop-in cassette:



In the simplest terms, the rearward motion of a rifle's bolt carrier contacts the hammer, which protrudes from the top of the Disruptor in the image above, and that contact sets in place a chain of mechanical steps that ultimately force the trigger to reset after each shot. *See* Dkt. 19-8 ¶ 32.

In contrast to the plug-and-play solution provided by the Disruptor, a Super Safety comprises pieces of a trigger mechanism that, with the requisite firearms and machining expertise, can be inserted into a rifle and replace its original safety-selector cam.



In the above image of a Super Safety taken from a Rare Breed complaint, Dkt. 18-5 ¶ 37, the replacement cam on the right connects to the cam arm on the left, and the cam arm interacts with the bolt carrier to force trigger reset. *See* Dkt.18-5 ¶ 25 (Rare Breed allegations of Super Safety mechanisms). The Super Safety achieves a similar operational purpose as the Disruptor, but with different components and mechanical processes that require assembly expertise not required for the Disruptor.

*The Centralized and Disruptor Actions*

Rare Breed commenced all of the Centralized Actions against Super Safety sellers in June 2025. All six allege that the Super Safety infringes the Centralized Patents, and none of the six

5

cases implicates the Disruptor. One case accuses an unrelated product, the Defender FRT made by Harrison Gunworks, of infringing the same patents as the Disruptor, but the Disruptor Patents are otherwise completely absent from the Centralized Actions. *See* Dkt. 35-1.

Rare Breed began suing the Disruptor Defendants a half-year later in December 2025 and January 2026. All eight of the Disruptor Actions accuse the same Disruptor product of infringing the same four Disruptor Patents. *Id.* And in all eight cases, the Disruptor Defendants have alleged or will allege that the '067 Patent and other prior art render the Disruptor Patents obvious and invalidate them—a defense that will uniquely apply in the Disruptor Actions. Six of the Disruptor Actions implicate only the Disruptor Patents and '067 Patent—no other product, no other patents—and just two include tacked-on claims for infringement of the Centralized Patents by other products, just one of which is directed at the Super Safety. Thus, ***six of the Disruptor Actions and five of the Centralized Actions—eleven out of fourteen—have no factual overlap***.

*The Lead Disruptor Action*

In the lead Disruptor Action against the Disruptor's manufacturer Peak Tactical, Chief Judge Kelly Rankin of the U.S. District Court for the District of Wyoming has resolved lengthy briefing on Rare Breed's motion for a temporary restraining order, motion for a preliminary injunction, and motion for expedited discovery in support of a renewed motion for a preliminary injunction—denying all three. In doing so, the Court analyzed the Disruptor's function, the '067 patent, and other prior art and engaged in patent infringement and invalidity analyses for purposes of determining whether Rare Breed showed a reasonable likelihood of success on the merits. *See ABC IP, LLC v. Peak Tactical, LLC*, 2026 U.S. Dist. LEXIS 55891 (D. Wyo. Feb. 13, 2026) (ruling on temporary restraining order and preliminary injunction); *ABC IP, LLC v. Peak Tactical, LLC*, 2026 U.S. Dist. LEXIS 79394 (D. Wyo. Mar. 11, 2026) (ruling on motion for expedited discovery).

In addition to those resolved matters, the parties in the Peak Tactical matter are presently briefing several other unique disputes: counterclaims for Rare Breed's infringement of the '067 Patent, Rare Breed's own counterclaims, dueling motions to dismiss, a new motion for expedited discovery, and Rare Breed's pending appeal to the Federal Circuit over Judge Rankin's early orders. The other Disruptor Defendant matters are presently stayed pending resolution of MDL proceedings.

*The Parallel MDL Proceedings*

Defendants in the Centralized Actions sought centralization of their six cases by commencing this MDL in December 2025. *See* Dkt. 1. In January 2026, Rare Breed agreed centralization was warranted but sought to include all of its pending matters against all sellers it accuses of infringing a variety of ten or so different Rare Breed patents. *See* Dkt. 14. The Panel issued the Transfer Order on April 2, 2026, centralizing the six actions for which this proceeding was commenced. *See* Dkt. 44. The Panel's Clerk issued the CTO the next day, conditionally transferring sixteen other matters, including the Disruptor Actions, but omitting many potential tagalong actions Rare Breed had flagged for centralization. *See* Dkt. 45.

In parallel, the Disruptor Defendants commenced MDL No. 3186, *In re Disruptor Trigger Mechanism Patent Litigation*, moving to transfer their actions, plus two other actions against Disruptor resellers Optics Planet and Mission Ridge, to the District of Wyoming. Rare Breed and the Disruptor Defendants are presently briefing that motion, with a hearing before the Panel set for May 28, 2026. *See* Dkt. 57.

## **LEGAL STANDARD**

"When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or

consolidated pretrial proceedings." 28 U.S.C. § 1407(a). Centralization is authorized upon the Panel's determination that "transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." *Id.* In transferring cases under its authority, "the panel may separate any claim, cross-claim, counter-claim, or third-party claim . . . ." *Id.* When a conditional transfer order identifies cases for centralization, the Panel may vacate the order if it concludes there are no common questions of fact between the centralized cases and the conditionally transferred cases or if "any factual questions that [they] may share . . . are insufficient to warrant transfer . . . ." *In re Medtronic, Inc.*, 543 F. Supp. 2d 1370, 1371 (J.P.M.L. 2008).

## ARGUMENT

There is no common patent among all of the Centralized Actions and Disruptor Actions nor any common product; to the contrary, they fall neatly—almost perfectly—into two entirely dissimilar groups that address different products and different patents. The two groups unquestionably pertain to the same product *type*, forced-reset triggers, but the mechanisms, intellectual property, and development and manufacturing processes at issue in each group are distinct and thus insufficient to warrant centralization. Moreover, centralization in the Eastern District of Texas will impose unnecessary burden on the parties and witnesses in the Disruptor Actions, none of which implicate Texas in any way and all of which will turn chiefly on records and witnesses in Wyoming. Unsurprisingly, the makers and sellers of the Disruptor uniformly oppose centralization in Texas. For these reasons, the Panel should vacate the CTO.

## I.   THERE ARE NO COMMON FACTS BETWEEN THE VAST MAJORITY OF THE CENTRALIZED AND DISRUPTOR ACTIONS.

In the Transfer Order, the Panel observed that the Disruptor Patents "are unrelated to the [Centralized] patents" but noted that both sets are "directed to inventions in the exceptionally

8

narrow field of forced reset triggers" and that the "presence of multiple unrelated patents does not preclude . . . centralizing actions asserting different combinations of such patents." Dkt. 44 at 2 (citing *In re Rembrandt Techs., LP, Pat. Litig.*, 493 F. Supp. 2d 1367 (J.P.M.L. 2007). As between the Centralized Actions and the Disruptor Actions, however, there are not simply different combinations of patents; the patents as between them are almost entirely different. Thus, the Centralized and Disruptor Actions are not like the cases centralized in *Rembrandt*, all of which infringed one or more the same set of patents in the same way. *See* 493 F. Supp. 2d at 1369. Nor are they like the cases centralized in *In re Pipe Flashing Patent Litigation*, in which "the same two patents [we]re involved in each action, and the complaint assert[ed] at least one common accused product" in every case. *See* 713 F. Supp. 3d 1414, 1415 (J.P.M.L. 2024) (quoted by Transfer Order at 2); *see also Aflibercept Pat. Litig.*, 730 F. Supp. 3d 1374, 1376 (J.P.M.L. 2024) (granting centralization, despite "many non-overlapping patents . . . asserted against each defendant" because plaintiff "assert[ed] a common set of thirteen patents in every action").

Indeed, while the Centralized and Disruptor patents indisputably apply to the same general types of products—forced-reset triggers—a shared product *type* is insufficient to justify centralization when the patents and products between the Centralized and Disruptor Actions are distinct. *See In re Alexsam, Inc. Pat. & Contract Litig.*, 437 F. Supp. 3d 1374, 1375 (J.P.M.L. 2020) (denying transfer despite all cases implicating at least one shared patent directed to a multifunction prepaid card system given the other "significant differences" like different accused products and varying other patent claims); *accord In re Charles R. Bobo Pat. Litig.*, 829 F. Supp. 2d 1374, 1375 (J.P.M.L. 2011) (denying transfer of seven actions "relating to computer-based messaging products and services" where patents were inconsistent across cases and not part of the same family).

Here, five of the Centralized Actions and six of the Disruptor Actions share nothing in common with each other—no product, no patent, no infringement theory. *See In re PilePro Antitrust & Pat. Litig.*, 140 F. Supp. 3d 1350, 1351 (J.P.M.L. 2015) (denying transfer despite "both actions involv[ing] infringement and validity of patents held by" a common plaintiff because "they [we]re not the same patents" and implicated different issues); *In re Porcine Circovirus Vaccine Prods. Pat. Litig.*, 655 F. Supp. 2d 1348, 1349 (J.P.M.L. 2009) (denying transfer of five actions in part because "only three involve[d] the same patent"). Moreover, the Centralized Patents and the Disruptor Patents share no common inventors and also fall in entirely different patent families. Claim construction for those two bodies of patents therefore will be different. Likewise, prior art searches will differ, as will analysis of invalidity—a defense for which the Disruptor Defendants already have been deemed to "have raised a substantial question." *See Peak Tactical*, 2026 U.S. Dist. LEXIS 55891, at *36-37.

Whatever few, collateral "factual questions that th[ese] action[s] may share with the MDL No. [3176] actions are insufficient to warrant transfer." *Medtronic*, 543 F. Supp. at 1371; *see also Alexsam*, 437 F. Supp. 3d at 1375 (denying transfer despite "a degree of factual commonality," including all cases being "related in some manner to one or both of two expired Alexsam patents" and directed to the same kinds of systems, because other facts and the relevant patent claims differed); *accord Charles R. Bobo*, 829 F. Supp. 2d at 1375 (denying centralization despite related patents across cases where several cases had no overlapping patents and were at different stages). The Panel should vacate the CTO.

## II.   CENTRALIZATION IN TEXAS WILL INCONVENIENCE THE PARTIES AND WITNESSES, AND IT WILL IMPOSE ADDED DEFENSE COSTS.

Not only do the Disruptor Actions lack a factual nexus with the Centralized Actions, but their centralization together in Texas also would create unnecessary inconvenience and cost. Peak

Tactical manufactures, markets, and sells the Disruptor to the other Disruptor Defendants, who Rare Breed accuses of infringement exclusively on a reseller basis, so the underlying questions of claim construction, invalidity, and infringement will be identical in all the Disruptor Actions. Peak Tactical is a Wyoming business, which is why Rare Breed commenced litigation there, and the bulk of the documents and witnesses related to Rare Breed's allegations and the Disruptor Defendants' defenses—drawings, devices, records, and personnel—are in Wyoming. None of the other Disruptor Defendants—who Rare Breed sued in Arizona, Idaho, Iowa, Louisiana, Missouri, and Washington—reside or operate in Texas. The convenience of the parties and witnesses therefore will be harmed by transfer there.

Moreover, because Rare Breed commenced litigation in Wyoming, Peak Tactical and the rest of the Disruptor Defendants engaged counsel with lawyers and offices in Wyoming and other jurisdictions where half of the Disruptor Actions are proceeding. While counsel can and will travel where directed, transfer to the Eastern District of Texas will impose scores of thousands of dollars in additional costs on the Disruptor Defendants for travel and accommodation of legal teams and client representatives.

Given these considerations, the Disruptor Defendants uniformly oppose merging their cases with the Centralized Actions. *See In re Accuscan*, 1996 U.S. Dist. LEXIS 17696, at *2 (J.P.M.L. Nov. 26, 1996) (denying transfer of cases that "share some common questions relating to such matters as patent validity" in part because of "overwhelming opposition to transfer registered by all parties except movants"). To avoid duplication, inconsistency, and all these added burdens, counsel for the Disruptor Defendants have proposed voluntary transfer of the Disruptor Actions to a separate centralized proceeding, bifurcation of Disruptor-only claims for adjudication on their own, and/or a stay of the Disruptor Actions against the dealers, allowing the lead case

11

against Peak Tactical to proceed to claim construction, infringement findings, and invalidity determinations on behalf of the remaining Disruptor Actions. Rare Breed has rejected all of these proposals, but its unwillingness to cooperate should not force the Disruptor Defendants to litigate in Texas.[9] The Panel should vacate the CTO as to the Disruptor Defendants.

### **CONCLUSION**

The Disruptor Actions belong together, *see* MDL No. 3186, but not with the Centralized Actions. The two groups of cases lack common questions of fact—no patents and no products present in all of them—and transferring the Disruptor Actions to Texas would create unnecessary hassle and cost. Accordingly, the Court should vacate the CTO as to the Disruptor Defendants and grant their motion in MDL No. 3186 for centralization in the District of Wyoming.

Dated: April 20, 2026

HOLLAND & HART LLP

*s/ Paul D. Swanson*
Paul D. Swanson
555 17th Street, Suite 3200
Denver, CO 80202
(303) 295-8000
pdswanson@hollandhart.com
**Attorneys for the Disruptor Defendants**

---

[9] Counsel for the Disruptor Defendants also have conferred with counsel for Atrius Development Group Corporation, Inc. ("Atrius"), the manufacturer of the accused Atrius Selektor product referenced in certain actions, including the *Hawkphin* and *WebCorp* cases at issue here, as well as other actions conditionally transferred by the Panel, including *ABC IP, LLC and Rare Breed Triggers, Inc. v. HK Parts Inc.*, No. 2:26-cv-00090 (D. Utah), and *ABC IP, LLC and Rare Breed Triggers, Inc. v. Orion Arms Corp. d/b/a Orion Wholesale*, No. 4:26-cv-00032 (S.D. Ind.). Atrius has indicated that it is separately evaluating its position with respect to those actions and anticipates making its views known to the Panel in connection with the pending proceedings, including in Atrius's own motions to vacate the CTO due April 27, 2026, in the *HK Parts* and *Orion Arms* cases.